JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARMEN ANGELES,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>KIK INTERNATIONAL LLC et al.,<br><br>　　　　Defendants. | Case No. 2:22-cv-07342-SB-AFM<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO REMAND CASE TO LOS ANGELES SUPERIOR COURT |

　　　　Plaintiff Carmen Angeles brought this wage and hour case in state court, and Defendant KIK International LLC (KIK) removed it to federal court. Dkt. No. 1. In the notice of removal, KIK asserts that the Court has federal question jurisdiction because Angeles is subject to collective bargaining agreements (CBAs) and therefore § 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §§ 141–197, completely preempts Angeles's claims. *Id*. at 8–13. KIK also claims that the Court has diversity jurisdiction. *Id*. at 13–24. Angeles moved to remand, Dkt. No. 15, and KIK opposes, Dkt. No. 18.[1] For the following reasons, Angeles's motion is granted.

I.

　　　　Angeles filed this case in state court as a putative class action. Dkt. No. 1 ¶ 4. Another class action involving similar claims and parties was pending in state

---

[1] Due to an error, Angeles filed her reply brief after the deadline. Dkt. Nos. 23 (Reply), 24 (Declarations of James A. De Sario and Kyle J. Ignatius). Nonetheless, the Court considers Angeles's reply brief. Angeles's counsel are admonished for their failure to adhere to their deadlines and are warned that future failures to do so may result in sanctions.

court. *Id*. ¶ 6. The other class action settled, and Angeles opted out of that settlement. *Id*. ¶¶ 9, 11. With Angeles's consent, the state court dismissed Angeles's class action allegations, leaving Angeles as the sole plaintiff in this case. *Id*. ¶ 12. KIK removed on October 7, 2022. Angeles does not contest the timeliness of KIK's removal.

In the complaint, Angeles brings the following claims: (1) failure to pay overtime wages in violation of Cal. Lab. Code § 510, (2) failure to pay the minimum wage in violation of Cal. Lab. Code § 1197, (3) failure to pay sick leave in violation of Cal. Lab. Code § 246, (4) failure to provide meal periods in violation of Cal. Lab. Code § 512, (5) failure to pay all wages upon termination in violation of Cal. Lab. Code §§ 201–02, (6) failure to provide accurate wage statements in violation of Cal. Lab. Code § 226, and (7) unfair competition in violation of Cal. Bus. and Prof. Code § 17200-17210 (UCL).

II.

Removal to federal court is proper where the federal court would have original subject matter jurisdiction over the complaint. 28 U.S.C. § 1441. For removal to be appropriate under 28 U.S.C. § 1441 on the basis of federal question jurisdiction, "a federal question must appear on the face of a properly pleaded complaint." *Ansley v. Ameriquest Mortg. Co.*, 340 F.3d 858, 861 (9th Cir. 2003) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) and *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998)). If removal is based on diversity jurisdiction, the removing defendant must prove complete diversity of citizenship among the parties and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. "The removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand." *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). A case must be remanded to state court if it appears at any time before final judgment that the court lacks subject matter jurisdiction. 28 U.S.C. § 1447(c).

III.

The Court first considers whether it has federal question jurisdiction. Although a federal question must normally appear on the face of the complaint, there is an exception to this rule for complete preemption—i.e., where a federal statute has such strong preemptive force over a state law claim that "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Caterpillar Inc.*, 482 U.S. at

393. The complete preemption doctrine extends to claims preempted by § 301 of the LMRA. *Castillo v. Long Beach Mem'l Med. Ctr.*, 132 F. Supp. 3d 1194, 1198 (C.D. Cal. 2015). Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). This provision has been construed to cover state suits that require interpretation of labor agreements. *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F. 3d 1102, 1108 (9th Cir. 2000).

To determine whether the LMRA preempts a cause of action, courts in the Ninth Circuit employ a two-part test. *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). First, a court determines "whether the asserted cause of action involves a right conferred upon an employee by virtue of state law, not by a CBA. If the right exists solely as a result of the CBA, then the claim is preempted, and . . . [the] analysis ends . . . ." *Id*. However, if "the right exists independently of the CBA, [a court] must still consider whether it is nevertheless substantially dependent on analysis of a collective-bargaining agreement. If such dependence exists, then the claim is preempted by section 301; if not, then the claim can proceed under state law." *Id*. at 1059–60 (internal quotations and citations omitted). A claim is "substantially dependent on analysis of a collective bargaining agreement" if it requires a court to "interpret" the agreement. *Balcorta*, 208 F. 3d at 1108. Interpretation means "something more" than "look[ing] at," "consider[ing]," "refer[ring] to," or "apply[ing]" the agreement. *Id*. "[R]eading and applying relevant, unambiguous provisions of [a] CBA" does not involve interpretation. *See Kobold v. Good Samaritan Regional Med. Ctr.*, 832 F.3d 1024, 1040 (9th Cir. 2016) (holding that application of unambiguous terms in a CBA is not interpreting the agreement).

A.

The Court begins by analyzing whether any of Angeles's claims arise solely from the CBAs. Angeles's complaint does not refer to the CBAs but rather invokes various provisions of the California Labor Code and California Business & Professions Code. Dkt. No. 1-3 (Compl.) at 9–17. Angeles's claims therefore

arise under state law. *See Burnside*, 491 F.3d 1053, 1061 (9th Cir. 2007) (holding that "because the right to be compensated for employer-mandated travel exists as a matter of state law, independent of the CBAs, on this initial basis at least the employees' claims are not preempted"); *McCray v. Marriott Hotel Servs., Inc.*, 902 F.3d 1005, 1010–11 (9th Cir. 2018) (holding that a claim involving a "minimum wage established by ordinance" does not arise from a CBA).

KIK challenges this conclusion with respect to two claims—the sick pay claim and the meal period claim. KIK first argues that Angeles's claim for additional sick pay compensation "inherently derives from the CBAs" because the CBAs' sick leave provisions "are not supplemental to existing state law" but rather "provide a completely different benefit." Dkt. No. 18 at 2. KIK fails to explain, however, why the existence of a "different benefit" necessarily means that Angeles's claim—which is predicated on an alleged violation of Cal. Lab. Code § 246—is rooted in the CBAs. To the extent that the CBAs do indeed provide a "completely different benefit," Angeles has not filed a claim asserting any failure to receive that benefit. Her claim is that KIK neglected to properly calculate the benefit owed for paid sick time under § 246(l). This claim is based on a right conferred by state law.[2]

KIK next contends that the meal period claim is preempted under the first step of the analysis because "the CBAs' provisions that provide for a single meal period when [an employee is] subject to a 4-10 work schedule are different than the state law provisions that allow for a second meal period when working more than 10 hours." Dkt. No. 18 at 4. Based on this alleged difference, KIK concludes that the CBAs "amount[] to a contractual waiver of a second meal period." *Id*. KIK's argument fails because Angeles's meal period rights are generally nonwaivable, and even if they were waivable, an implicit waiver would lack "clear and unmistakable" language necessary to give it preemptive effect. *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1081–82, 1082 n.12 (9th Cir. 2005); *Burnside*, 491 F.3d at 1066 n.14 (citing *Valles* for the proposition that meal periods

---

[2] In asserting complete preemption, KIK refers generally to "the contractual waivers contained in the CBAs" but neglects to provide any analysis of these "waivers." Dkt. No. 18 at 1. KIK does not recite the language of these purported waivers or even cite to the relevant provisions in the CBAs. The Court finds that KIK has waived this argument for failure to meaningfully develop it—or, at a minimum, it has failed to carry its burden of proving preemption based on any asserted express contractual waiver.

cannot be waived); *see also Cramer v. Consolidated Freightways, Inc.*, 255 F.3d 683, 695 n.7 (9th Cir. 2001) ("[E]vidence of such a waiver would need to be 'clear and unmistakable' before a court could even consider whether to give it effect.") (internal citation omitted); *Segismundo v. Rancho Murieta Country Club*, No. 221CV02272-DAD, 2022 WL 9921676, at *5 (E.D. Cal. Oct. 17, 2022) (citing *Valles* and rejecting a preemption argument based on waiver because "meal and rest periods are nonnegotiable").

Accordingly, KIK has not shown that any of Angeles's claims arise solely under the CBAs. Rather, her claims arise under California law. *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994) (holding that when the "primary text" needed to decide whether a plaintiff is entitled to relief is a state statute, the claim arises independently under state law and not under a CBA). The Court proceeds to assess the second *Burnside* element, which asks whether the Court will be required to interpret the CBAs in adjudicating Angeles's claims.

B.

The parties dispute whether the Court will be required to interpret the CBAs' provisions. "[W]hen the meaning of contract terms is not the subject of dispute, the bare fact that a [CBA] will be consulted in the course of state-law litigation" does not result in preemption. *Livadas*, 512 U.S. at 124. None of Angeles's claims requires anything more than such consultation. At the motion hearing, KIK's counsel conceded that KIK has not identified any ambiguous provisions within the CBAs, apart from the agreements' grievance and arbitration provisions. This concession is fatal to KIK's arguments in the second part of the *Burnside* analysis. *Kobold*, 832 F.3d at 1040 (finding that "there is nothing . . . to interpret" when the CBA terms are unambiguous); *McCray*, 902 F.3d 1012 ("reading and applying relevant, unambiguous provisions of the CBA required the court to only 'look to,' rather than 'interpret,' the agreement").

1. Sick Pay Claim. Angeles's sick pay claim is based on KIK's alleged practice of excluding compensable forms of remuneration in calculating sick pay. *See* Compl. ¶¶ 17, 45–46. KIK argues that this theory "rais[es] questions as to the meaning and intent of the CBAs' provisions." Dkt. No. 18 at 3. But KIK does not identify any ambiguous sick pay provisions in the CBAs that will require interpretation. Nor could it. Plaintiff alleges that KIK violated § 246 by failing to properly calculate the benefit owed under that provision. Compl. ¶ 46. At most, a court will be required to apply the rate of pay applicable to Angeles to the total amount of accrued sick pay time to determine if a statutory violation has occurred.

5

KIK has not shown that this task involves interpretation, and so § 301 does not completely preempt Angeles's sick pay claim. *Burnside*, 491 F.3d at 1073–74 (referring to a CBA to determine the applicable wage rate for purposes of calculating damages does not involve interpreting the CBA).

   2. Minimum Wage and Overtime Claims.  KIK's argument as to Angeles's minimum wage and overtime wage claims suffers from the same defect.  These claims allege that KIK failed to pay Angeles the required minimum wage and for all compensable time worked.  Compl. ¶¶ 35, 41.  KIK asserts that "the Court will necessarily be required to interpret the CBA provisions and the stated wage ranges within said agreements to determine the length and extent of coverage during the relevant time periods. . . ."  Dkt. No. 18 at 5.  KIK's assertion goes to a court's *application* of the CBAs' terms, not their *interpretation*.  Angeles does not allege that she was paid at an improper wage rate, but rather that she was not paid for all compensable time and at the state-mandated minimum wage.  "The basic legal issue . . . , therefore, can be decided without interpreting the CBA[s]."  *Burnside*, 491 F.3d at 1074.  In the absence of any ambiguity in the CBAs' provisions, § 301 does not completely preempt Angeles's claims.  *Kobold*, 832 F.3d at 1040.

   3. Meal Period Claim.  Angeles's claim alleges that KIK failed to provide compensation for unprovided meal periods at the regular rate of pay as the Labor Code requires.  Compl. ¶ 54.  KIK argues that the CBAs' meal period provisions operate as a waiver of the Labor Code's requirements and will require the Court to "analyze and interpret the CBAs to determine whether and which different terms control because the two provisions are interconnected."  Dkt. No. 18 at 4.  KIK's argument is unpersuasive for the reasons stated *supra*, and because KIK has not shown that there is a genuine dispute about the meaning of the CBAs' meal period terms.  *Kobold*, 832 F.3d at 1040.

   4. Derivative Claims.  Angeles's remaining claims for failure to pay all wages upon termination, inaccurate wage statements, and unfair competition derive from the claims already discussed.  Thus, the Court does not need to assess whether resolving them will involve interpreting the CBAs.

   5. Exhaustion Defense.  In its final effort to create federal question jurisdiction, KIK contends that Angeles has failed to exhaust the grievance and arbitration procedures in the CBAs, and that this alleged failure will require an interpretation of these requirements in the CBAs.  The failure to exhaust is relevant only to KIK's possible arbitration defense and does not serve as a basis for complete preemption.  See *Dall v. Albertson's, Inc.*, 234 Fed. App'x 446, 449 (9th

Cir. 2007) ("Section 301 preemption is an exception to the well-pleaded complaint rule only where the face of the complaint shows a § 301 issue requiring interpretation of a CBA."); *McCray*, 902 F.3d at 1010 ("A defendant can't rely on a CBA as an aspect of her defense simply to 'inject a federal question into an action that asserts what is plainly at state-law claim.") (cleaned up).  KIK has cited no authority suggesting otherwise.  Moreover, this defense only applies to disputes over "alleged . . . violations of any of the terms or provisions of [the CBAs]."  Dkt. No. 1-2 at 10 of 80, 46 of 80.  Angeles is asserting only state-law claims, so it is far from clear that this defense would even apply.  *See Livadas*, 512 U.S. at 125 (finding that an arbitration provision was irrelevant where there was no "indication that the parties to the [CBA] understood their arbitration pledge to cover the[] state-law claims.").  Accordingly, the fact that the CBAs contain grievance and arbitration provisions does not establish federal question jurisdiction.

In short, since Angeles's claims will at most require a court to apply or "look to," rather than interpret, the CBAs, § 301 does not completely preempt these claims.  Therefore, § 301 does not confer federal question jurisdiction.  *Burnside*, 491 F.3d at 1059–60.

IV.

The Court now considers whether it has diversity jurisdiction, which requires complete diversity among the parties and an amount in controversy that exceeds $75,000.  28 U.S.C. § 1332.  Angeles does not dispute that there is complete diversity among the parties but challenges KIK's showing that the amount in controversy exceeds the statutory minimum.

A removing defendant must prove the amount in controversy by a preponderance of the evidence.  *Rodriguez v. AT&T Mobility Servs., LLC*, 928 F.3d 975, 977–78 (9th Cir. 2013).  Where a complaint alleges a "pattern and practice" of wrongful conduct, the defendant must "show that its estimated amount in controversy [arising from the wrongful conduct] relied on reasonable assumptions."  *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1198–99 (9th Cir. 2015).  "[A] defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions."  *Id*. at 1197.  Relying on conclusory allegations without support is insufficient.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090–91 (9th Cir. 2003).

KIK fails to carry its burden.  In its removal papers, KIK claims that a conservative estimate of the amount in controversy in this case is $78,082.35.  Dkt.

No. 1 ¶ 73. But rather than demonstrating that this is a conservative estimate, KIK appears to have devised a theory of damages that conveniently crosses the jurisdictional threshold based on unsupported assumptions. KIK claims that Angeles allegedly suffered wage and hour violations amounting to $39,262.20 in damages. Dkt. No. 1 at 17–22. This amount includes calculations for each of Angeles's claims that are based on assumed frequency of violations and assumed amounts owing as a result thereof. *Id*. ¶¶ 51–52, 56, 59, 62–63, 67, 70. Noticeably missing from the calculations in the removal or opposition papers is any plausible factual basis for KIK's assumptions. These assumptions appear to be "pulled from thin air." *Baretich v. Everett Financial, Inc.*, No. 18-cv-1327, 2018 WL 4579857, at *4 (S.D. Cal. Sept. 25, 2018).

For example, KIK alleges that Angeles potentially could recover $7,287.31 or $14,574.60 on her overtime wage claim based on the assumptions that Angeles worked 30 minutes or one hour of overtime per workday, respectively. Dkt. No. 1 ¶¶ 51–52. KIK provides no justification for these overtime amounts, let alone any basis for proffering two alternatives; and KIK further assumes, without any factual support, that none of the overtime wages owed to Angeles was paid.[3] KIK's calculation of Angeles's minimum wage claim ($4,206 for unpaid wages and an additional $4,206 as liquidated damages) fares no better. *Id*. ¶ 56. KIK assumes that Angeles "worked at least three hours of straight time each week for which she was not paid at least minimum wages," including for required pre-shift temperature checks and working through meal breaks. *Id*. ¶ 55–56. But the time needed to complete a temperature check is not substantial, and Angeles does not allege that she always had to work through a meal break. KIK does not explain why three hours of unpaid time is a reasonable assumption. Nor does KIK explain its

---

[3] KIK's reliance on *Mejia v. DHL Express (USA), Inc.*, No. CV 15-890, 2015 WL 2452755 (C.D. Cal. May 21, 2015), for assuming a 100% violation rate is misplaced. In *Mejia*, the plaintiff alleged that the defendant had "*uniform* policies, practices and procedures." *Id*. at *4 (emphasis added). Where, as here, a plaintiff does not allege a similarly uniform pattern and practice of violations, a 100% violation rate is an unreasonable assumption. *See Ibarra*, 775 F.3d at 1198–99 (finding that a plaintiff's allegation that there was a "pattern and practice" of violating a Labor Code obligation did not "necessarily mean *always*" committing the violation).

assumptions supporting its calculations of Angeles's sick pay claim (*Id*. ¶ 59) and meal period claim (*Id*. ¶¶ 62–63).[4]

The failure to provide any factual support for its assumptions are fatal to KIK's attempt to discharge its burden of proving that the amount in controversy requirement is met. *See Garibay v. Archstone Communities LLC*, 539 Fed. App'x 763, 764 (9th Cir. 2013) (finding that a removing defendant had not met its burden of proof when it failed to "provide any evidence regarding why [an] assumption that [an] employee missed two rest periods per week" was any more appropriate than any other assumption).[5] The magnitude of this failure is all the more apparent when the Court considers the fact that KIK recently entered into a class settlement with an average payout to class members of $1,000 (as defense counsel acknowledged at the mandatory scheduling conference). KIK now claims that Angeles, who opted out of the settlement, could be entitled to as much as 40 times that payout. While this claim is not impossible, the fact that KIK would make unsupported assumptions in this case after participating in a class action that undoubtedly would have provided it with detailed damage information is, to say the least, suspicious.

Even if the Court were to credit KIK's most favorable assumptions on the amount in controversy for each claim, KIK can only satisfy the jurisdictional minimum by showing that Angeles likely would be entitled to at least $35,000 in attorney's fees if successful in this case. This showing must be made by a preponderance of the evidence in the form of "summary-judgment-type evidence." *Fritsch v. Swift Trans. Co. of Ariz., LLC*, 899 F.3d 785, 795 (9th Cir. 2018). "A district court may reject the defendant's attempts to include future attorneys' fees

---

[4] Angeles does not challenge the amounts in controversy KIK alleges in her claims for failure to pay all wages upon termination ($3,997.20) and failure to provide accurate wage statements ($2,550). Dkt. No. 1 ¶¶ 67, 70. Since these amounts do not satisfy the jurisdictional minimum, they do not alter the Court's analysis.

[5] KIK argues that Angeles is required to submit factual support demonstrating that KIK's assumptions are unreasonable, but KIK is mistaken. When a plaintiff mounts a factual attack on a defendant's amount in controversy assumptions, the plaintiff may—but is not required to—submit evidence. The plaintiff "need only . . . make a reasoned argument as to why any assumptions . . . are not supported by evidence." *Harris v. KM Industrial, Inc.*, 980 F.3d 694, 700 (9th Cir. 2020). Angeles has provided a sufficient challenge to KIK's unsupported assumptions.

in the amount in controversy if the defendant fails to satisfy this burden of proof." *Id*. KIK has failed to carry its burden here.

KIK cites to wage and hour cases in which attorney's fees in excess of $30,000 were approved and to the hourly billing rates of $500 and $750 sought by Angeles's counsel in another case. Dkt. Nos. 1 ¶¶ 71–72, 18 at 12–16, 18-2 ¶ 23.[6] But KIK fails to explain how the information in these cases supports an assessment of the reasonable hourly rates in this case and the reasonable amount of time that would be spent prosecuting this action. As for reasonable rates, KIK relies on rates charged in a class action lawsuit. Dkt. No. 18-2 ¶ 23 ("Class counsel's hourly rate for The Nourmand Firm, APC in this case . . . ."). There is no evidence that a law firm reasonably could expect to obtain those rates in a case involving an individual client who is pursuing a relatively low-value, opt-out claim. As for the reasonable amount of time, KIK asserts that cases like this one "typically require more than 100 attorney hours of work to be spent to litigate the matter to resolution and/or trial." Dkt. No. 18-1 ¶ 3. KIK has not shown, however, that this is a "typical" case that would warrant the expenditure of 100 hours to prosecute a $40,000 (or less) lawsuit that would have settled for $1,000 had Angeles not opted out of the class action.

In short, KIK has not provided relevant evidence of the likely fees to be incurred in this action. The probative value of rates charged and hours expended in other lawsuits depends on the similarity of the compared cases. *Serran v. Pac. Coast Feather Cushion Co.*, No. 17-cv-4414, 2017 WL 3720630, at *3 (C.D. Cal. Aug. 28, 2017) (finding comparative proof inadequate for failing to "compare the allegations and circumstances of those cases with those of the instant matter"); *Fontana v. Volkswagen Grp. of Am., Inc.*, No. 2:22-cv-03148, 2022 WL 3335650, at *3 (C.D. Cal. Aug. 12, 2022) (same). KIK has not made a proper apples-to-apples comparison, and there are reasons to believe that the circumstances of this case are meaningfully different. Indeed, if the parties and their respective counsel are being at all reasonable, this litigation will promptly settle.[7] Where, as here, "a

---

[6] The Court grants KIK's unopposed requests judicial notice of Angeles's counsel's court filings. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).

[7] At the hearing, defense counsel suggested that his client would not promptly settle this case. The Court declines to accept this questionable suggestion, made in the context of an opposition to a remand motion. Absent any credible evidence to

fee estimate is too speculative because of the likelihood of a prompt settlement[,]" a district court is not required to find a removing defendant's attorney's fee estimate reasonable. *Fritsch*, 899 F.3d at 795.  Thus, KIK has not demonstrated that the Court has diversity jurisdiction.

V.

Since KIK has not met its burden of showing that the Court has federal question or diversity jurisdiction over any of Angeles's claims, removal was improper, especially in light of the maxim that "any doubt about the right of removal requires . . . remand." *Moore-Thomas*, 553 F.3d at 1244.  This case is hereby REMANDED to the Los Angeles Superior Court.

IT IS SO ORDERED.

Date: December 9, 2022

                                                        Stanley Blumenfeld, Jr.
                                                        United States District Judge

---

the contrary, the Court will not assume that the parties and their counsel will act unreasonably.